IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.: 3:25-cr-999 |
| | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 2 |
| | ) | 18 U.S.C. § 981(a)(1)(C) |
| vs. | ) | 26 U.S.C. § 7206(2) |
| | ) | 28 U.S.C. § 2461(c) |
| | ) | |
| | ) | INFORMATION |
| FREDDIE WATSON | ) | |

THE UNITED STATES ATTORNEY CHARGES:

At times relevant to this Information:

1. The Defendant, FREDDIE WATSON, was a citizen of the United States and resident of South Carolina.

2. FREDDIE WATSON worked for Company P from May 7, 2012, through August 30, 2018, finishing as a Manufacturing Operations Supervisor. Prior to his promotion, FREDDIE WATSON was the V-Remanufacturing Teardown Supervisor.

3. Ford Motor Company (FMC) was an American multinational automobile manufacturer headquartered in Dearborn, Michigan. FMC also manufactured replacement parts for its automobiles, including engine parts, under its "Ford" and "Mastercraft" brands.

4. A "diesel core injector" is analogous to a fuel injector in a gasoline-powered engine. A diesel core injector is a valuable part that can be rebuilt, re-sold, and returned to service.

5. In order to maintain quality control over its branded used parts, FMC offered a "no risk" return policy that refunded a deposit included in the cost of the replacement injector, provided that it was returned in accordance with the company's guidelines. Those guidelines included the

use of a special diesel core injector box, which had codes and identifying labels meant to track inventory and deter counterfeiting.

6. To initiate the return process, a new or remanufactured component was ordered and provided to the customer. The component came packaged in an assembled diesel core injector box, with a Ford or Mastercraft label affixed to one side. After the used part was removed from the vehicle and replaced, the used part had to be placed back into the original FMC diesel core injector box (i.e., the same packaging used to ship the replacement part). FMC did not provide empty diesel core injector boxes to FMC Dealers (or to customers) to return used parts. FMC did not ship flat, unused diesel core injector boxes to FMC Dealers (or to customers) for any purpose. Accordingly, empty diesel core injector boxes for returns that an FMC Dealer had in its possession only should have been acquired through the purchase of a replacement part for a customer. FMC dealers and customers had to return the used core in the diesel core injector box from the replacement part in order to receive credit for the return.

7. FMC also had a number of guidelines that had to be followed in order to receive credit for a returned diesel core injector. For instance, the returned diesel core injector had to be the same model type as the replacement part. The FMC Dealer had to properly package the used diesel core injector to ensure that it was shipped safely, which is why all used diesel core injectors were to be returned in the diesel core injector box in which the replacement part came. The diesel core injector box was supposed to contain a used diesel core injector and should not have been empty. Once the used diesel core injector was returned, FMC forwarded it to a company facility or an authorized supplier for remanufacturing. After the used diesel core injector was removed

from the diesel core injector box, FMC would want the used diesel core injector boxes destroyed to avoid additional returns in the same box.

8. Company P, the employer of FREDDIE WATSON, was an authorized supplier for remanufacturing diesel core injectors.

9. Company A was a Michigan-based business involved in the purchase and sale of new and used auto parts. The website of Company A advertised diesel core injectors and other parts related to rebuilding diesel engine injection systems.

## THE SCHEME TO DEFRAUD

10. That beginning no later than in or about July 2016 and continuing to in or about September 2020, in the District of South Carolina and elsewhere, the Defendant, FREDDIE WATSON, and others known and unknown to the United States Attorney, knowingly devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and during such period, knowingly transmitted and caused to be transmitted in interstate commerce, by means of wire communications, certain electronic signals, for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Sections 1343 and 2.

## MANNER AND MEANS

11. It was part of the scheme that FREDDIE WATSON, through his employment at Company P, had access to discarded diesel core injector boxes with codes and identifying labels meant to track inventory. These diesel core injector boxes were intended to be destroyed by Company P, because the return process had reached fruition when Company P received the diesel core injector boxes with the used parts.

12. It was a further part of the scheme that after FREDDIE WATSON left Company P, he continued to receive diesel core injector boxes from individuals who remained at the business.

13. It was a further part of the scheme that FREDDIE WATSON had a business relationship with Company A. FREDDIE WATSON would gather empty diesel core injector boxes from the premises of Company P and send them to Company A. Company A would then facilitate the submission of the diesel core injector boxes to FMC with unauthorized parts and receive reimbursement to which it was not entitled. Despite the codes and identifying labels on the diesel core injector boxes, FMC did not exert sufficient control over the return program to discover the discrepancy.

14. Beginning no later than in or about July 2016, and continuing to in or about September 2020, FREDDIE WATSON received approximately $251,819.76 from Company A as compensation for sending approximately 9,366 diesel core injector boxes. FMC generally paid approximately $180 per diesel core injector box as part of its "no risk" return program.

15. FREDDIE WATSON's contribution of the discarded diesel core injector boxes was integral to the scheme, because FMC would not have paid Company A without the appropriate codes and identifying labels affixed to the diesel core injector boxes.

## COUNT ONE
(Wire Fraud)

16.     The allegations contained in paragraphs 1 through 15 of this Information are incorporated herein by reference.

17.     On or about September 21, 2020, in the District of South Carolina, the Defendant, FREDDIE WATSON, in furtherance of the above-described scheme and artifice to defraud, did knowingly obtain money and property by means of false and fraudulent pretenses, representations, and promises, and did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communications, certain electronic signals, for the purpose of executing the scheme and artifice to defraud, in that FREDDIE WATSON did receive approximately $3,180.00 via Paypal from Company A as compensation for approximately 159 diesel core injector boxes, which were intended to be submitted to FMC for improper reimbursement,

In violation of Title 18, United States Code, Section 1343.

# **FORFEITURE**

WIRE FRAUD:

Upon conviction to violate Title 18, United States Code, Section 1343 as charged in this Information, the Defendant, FREDDIE WATSON, shall forfeit to the United States, any property, real or personal, which constitutes, is traceable to, or is derived from proceeds traceable to such offense.

PROPERTY:

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the property which is subject to forfeiture upon conviction of the Defendant for the offense charged in this Information includes, but is not limited to, the following:

> Proceeds/Forfeiture Judgment:
>
> A sum of money equal to all proceeds the Defendant obtained directly or indirectly as the result of the offense charged in this Information, that is, a minimum of $251,819.76 and all interest and proceeds traceable thereto, and/or that such sum equals all property traceable to his violation of 18 U.S.C. § 1343.

SUBSTITUTE ASSETS:

If any of the property described above, as a result of any act or omission of a Defendant:

> a. cannot be located upon the exercise of due diligence.
> b. has been transferred or sold to, or deposited with, a third party;
> c. has been placed beyond the jurisdiction of the court;
> d. has been substantially diminished in value; or

6

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the Defendant up to the value of the forfeitable property;

  Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By:
Winston D. Holliday, Jr.
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Tel. (803) 929-3079
Email:  Winston.Holliday@usdoj.gov